Greg WILEY and Julia Mittelstadt, Individually and on Behalf of all Others Similarly Situated, Plaintiffs/Appellants

v.

Gregory F.X. DALY, Collector of Revenue for the City of Saint Louis, et al, Defendants/Respondents.

No. ED 102019

Missouri Court of Appeals,
Eastern District,
*DIVISION ONE*.

Filed : October 20, 2015

Jonathan Beck, 3500 Magnolia Ave, St. Louis, Missouri 63104, for Appellant.

Nancy R. Kistler (attorney for Thomas Kloeppinger and the City of St. Louis), Christine Lynn–Lusczek Hodzic (co-counsel), 1200 Market Street, City Hall Room 314, St. Louis, Missouri 63103, David H. Luce (attorney for Gregory F.X. Daly), 120 South Central, Suite 1800, Clayton, Missouri 63105, Stephen J. Kovac (co-counsel), P.O. Box 21658, St. Louis, Missouri 63109, for Respondent.

## OPINION

Lisa S. Van Amburg, Chief Judge

Appellants Greg Wiley and Julia Mittelstadt appeal the trial court's judgment in favor of Respondents Gregory F.X. Daly, as the Collector of Revenue for the City of St. Louis (Collector), and M. Jane Schweitzer, as the Circuit Clerk for the City of St. Louis (Circuit Clerk), on Appellants' petition for declaratory relief and reimbursement of court costs paid to Collector.[1] We affirm in part, reverse in part, vacate in part, dismiss in part, and remand with instructions.

### Background

This case concerns Circuit Clerk's assessment of $177 in court costs in suits brought by Collector against residents of the City of St. Louis for delinquent property taxes.

Collector brought suit against each Appellant seeking recovery of their respective delinquent property taxes along with interest, penalties, attorney fees, and the subject court costs. Both Appellants received service. Neither entered an appearance or contested the suit. Some months later and before judgment was entered, when renewing their vehicle registrations at the Collector's office, Appellants were required to pay their delinquent taxes, plus the court costs, in order to receive the "paid" tax receipt necessary for license plate renewal. Appellants tendered the amount demanded, including court costs, directly to Collector's office. Wiley submitted his payment of court costs under protest. Mittelstadt paid without protest.

1. The City of St. Louis was also named as a defendant but was dismissed by the trial court. Appellants do not appeal that order.

Collector issued a "paid" receipt to each Appellant. Collector then forwarded the portion denominated as court costs to Circuit Clerk, who taxed them against each Appellant. The underlying collection suits were subsequently dismissed with prejudice.

Wiley then filed suit alleging that Respondents assessed court costs against him unlawfully in that several if not all line items comprising the total $177 bill (applied as standard practice in every case of this kind) are not authorized by Missouri statutes, and that Collector wrongfully withheld his tax receipt to coerce payment of costs. Wiley's petition also sought certification of a class of similarly situated taxpayers whose tax receipts were withheld pending payment of the challenged court costs. The trial court denied class certification[2] but allowed Mittelstadt to join as an additional party, after which Appellants filed an amended petition containing three counts. Count I sought (a) class certification, (b) declaratory judgment as to the unlawfulness of specific charges, (c) an injunction prohibiting the Collector's collection and withholding practices, and (d) creation of a reimbursement fund. Count II sought reimbursement of court costs (plus interest) for every taxpayer whom Collector sued for delinquent taxes since 2002. Count III sought declaratory judgment that the court costs in question also violated the Hancock Amendment (Mo. Const. art. X, § 22(a)).[3]

Respondents moved for dismissal or, alternatively, summary judgment on all three counts. As relevant here, Respondents argued that declaratory relief is unavailable because an adequate and exclusive remedy exists in § 514.270, which directs taxpayers to seek a refund of unlawfully taxed court costs in the same court that assessed such costs. Respondents further argued that Appellants' claims are precluded by the voluntary payment doctrine and that the challenged costs do not constitute a tax within the meaning of the Hancock Amendment.

The trial court held a hearing and ultimately entered judgment in favor of Respondents. It dismissed all of Mittelstadt's claims, reasoning that they were barred by the voluntary payment doctrine because she failed to tender payment under protest. The court also dismissed count III for failure to state a claim, concluding that the challenged costs are not a tax within the meaning of the Hancock Amendment.

Proceeding to the merits of Wiley's remaining claims (counts I & II), the court deemed the costs lawful and also noted that Wiley had an opportunity to challenge the court costs within the underlying delinquency case pursuant to § 514.270 RSMo, yet he did not. Thus, the trial court granted summary judgment in favor of Respondents.

Appellants appeal and assert that the trial court erred in that: (1) the voluntary payment doctrine contravenes the statutory remedy for recovery of unauthorized costs under § 514.270; (2) the court costs in question operate as a tax for purposes of Hancock Amendment analysis; (3) specific fees comprising the bill of costs are

---

2. The court found that Wiley failed to prove sufficient commonality, typicality, and adequacy of representation concerning the putative class because he was the only putative class member who tendered payment of court costs under protest. This reasoning would suggest that Mittelstadt was the better class

representative, but the court dismissed her claims under the voluntary payment doctrine, which was error, as discussed below.

3. The full text of the Hancock Amendment lies in Mo. Const. art. X, §§ 16–24. Appellants invoke only § 22(a).

not authorized by Missouri law; and (4) "a class action is a superior method of addressing the thousands of cases in which taxpayers are entitled to refunds under § 514.270."

## Standards of Review

We review *de novo* the trial court's grant of a motion to dismiss. *Lynch v. Lynch,* 260 S.W.3d 834, 836 (Mo. 2008). A motion to dismiss for failure to state a claim upon which relief can be granted should not be granted unless "taking all factual allegations as true, plaintiff's pleadings are insufficient to establish a cause of action." *Grewell v. State Farm Mut. Auto. Ins. Co., Inc.,* 102 S.W.3d 33, 35–36 (Mo. 2003); Rule 55.27(a)(6). On a motion to dismiss for failure to state a claim, we construe the petition favorably, giving the pleader the benefit of every reasonable intendment concerning the facts alleged, and if the allegations invoke principles of substantive law that may entitle him or her relief, the petition is not to be dismissed. *Mays–Maune & Assoc., Inc. v. Werner Bros., Inc.,* 139 S.W.3d 201, (Mo. App. E.D. 2004). However, when, on a motion to dismiss for failure to state a claim, "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 74.04." Rule 55.27(a).

This Court also reviews *de novo* the trial court's grant of a motion for summary judgment. *ITT Comm. Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. 1993). If the "motion, the response, the reply and the surreply show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law... the court shall enter summary judgment forthwith." Rule 74.04(c)(6); *Conway v. St. Louis Co.,* 254 S.W.3d 159, 163 (Mo. App. E.D. 2008). In ruling on a motion for summary judgment, we review the record in the light most favorable to the "non-moving party." *Conway,* 254 S.W.3d at 163–64. Because the role of this Court is to determine whether or not the trial court reached a proper result, we will uphold an order granting summary judgment if it is sustainable on any theory. *McMullin v. Borgers,* 761 S.W.2d 718, 719 (Mo. App. E.D. 1988).

## Discussion

*Voluntary Payment Doctrine (Point I)*

■ For their first point, Appellants submit that the trial court erred in dismissing Mittelstadt's claims as barred by the voluntary payment doctrine because that doctrine is "patently incompatible" with § 514.270, which provides an unequivocal right to seek a refund of unlawfully taxed costs. We agree.

The voluntary payment doctrine is a long-recognized affirmative defense in actions involving common law claims for restitution of money. *See Jurgensmeyer v. Boone Hosp. Ctr.,* 727 S.W.2d 441, 444 (Mo. App. W.D. 1987) (applying doctrine to bar claim for money had and received) and *Unverferth v. City of Florissant* 419 S.W.3d 76, 106 (Mo. App. E.D. 2013) (applying doctrine to bar claim for unjust enrichment). The doctrine arose in England out of principles of equity.[4] It first

---

4. In England, the doctrine appears in the case of *Bilbie v. Lumley,* (1802) 2 East 469 (1802 ER 448), which involved an action for money had and received by an underwriter of an insurance policy against the insured. *Id.* at 469. The plaintiff alleged that the money was erroneously paid based on a mistake of law. *Id.* at 469. The court rejected that theory, reasoning, "[e]very man must be taken to be cognizant of the law; otherwise there is no saying to what extent the excuse of ignorance

emerged in Missouri during the Civil War in *Claflin v. McDonough*, where the court reasoned that "the plaintiffs paid the money with a full knowledge of all the facts and circumstances, and well knowing that they were under no legal obligations to pay it." 33 Mo. 412, 416 (1863).[5]

Under the voluntary payment doctrine, a person who has voluntarily paid a defendant with full knowledge of all material facts is not entitled to later recover that payment unless it resulted from fraud or duress. *Huch v. Charter Commc'ns, Inc.*, 290 S.W.3d 721, 726 (Mo. 2009). If the payment was induced solely by a mistake of law, the plaintiff is not entitled to restitution. *Am. Motorists Ins. Co. v. Shrock*, 447 S.W.2d 809, 812 (Mo. App. K.C. 1969). The reasoning behind this doctrine is that "it would be inequitable to give [the payor] the privilege of selecting his own time and convenience for litigation short of the bar of the statute of limitations ... thereby subject[ing] the payee to the uncertainties and casualties of human affairs likely to affect his means of defending the claim." *Id.*

The voluntary payment doctrine, however, is "not applicable in all situations." *Eisel v. Midwest BankCentre*, 230 S.W.3d 335, 339 (Mo. 2007). Namely, as illustrated by Missouri precedent, the doctrine cannot be used to abrogate statutory remedies specifically intended to protect the public from unlawful practices. In *Eisel*, bank customers brought a class action alleging that the defendant bank was engaged in the unauthorized practice of law through its loan processing procedures.

*Id.* at 337. The Missouri Supreme Court held that the voluntary payment doctrine was not available as a defense to the statutory recovery of treble damages for the unauthorized practice of law. *Id.* at 339–40. The Court reasoned that the activities of the bank were prohibited by statute and were "not subject to waiver, consent or lack of objection by the victim." *Id.* at 339. Therefore, given the existence of a specific statutory remedy, it would be "illogical and inequitable" to hold the consumer, not the mortgage lender, responsible for recognizing the unauthorized practice of law and bar recovery because of a voluntary payment. *Id.* at 339–40.

Similarly, in *Carpenter v. Countrywide Home Loans, Inc.*, the Missouri Supreme Court held that the voluntary payment doctrine was not available to preclude customers of a mortgage broker from recovering document preparation fees that were expressly prohibited by law. 250 S.W.3d 697, 703 (Mo. 2008) (citing *Eisel*, 230 S.W.3d at 339–40). In *Huch*, the Court held that the voluntary payment defense was not available in actions brought under Missouri's Merchandising Practices Act[6] because to hold otherwise "would nullify the protections of the act and be contrary to the intent of the legislature." 290 S.W.3d at 727.

Here, in accepting Respondents' voluntary payment defense to bar Mittelstadt's claims, the trial court relied on *Pitman v. City of Columbia*, where the court observed that, "[u]nder the doctrine, tax payments are presumed to have been

might not be carried. It would be urged in almost every case." *Id.* at 472.

5. *Claflin* involved a claim to recover money paid to a defendant tax collector, but in the form of a common law claim for money had and received. *Id.* at 413, 416. For a thor-

ough history of the voluntary payment doctrine, *see* John E. Campbell & Oliver Beatty, *Huch v. Charter Communications, Inc.: Consumer Prey, Corporate Predators; and a Call for The Death of the Voluntary Payment Doctrine Defense*, 46 Val. U. L.Rev. 501, 503–05 (2012).

6. §§ 407.010 to 407.309.

made voluntarily, therefore it is incumbent upon the taxpayer to establish either that the doctrine should not apply or that his or her payment was made involuntarily." 309 S.W.3d 395, 403–04 (Mo. App. W.D. 2010). But *Pitman* involved a common law claim for unjust enrichment where the statutory framework expressly requires a taxpayer to pay under protest in order to preserve a claim for refund. "When a challenge is made to a tax assessment, the procedure as outlined in § 139.031 involves paying taxes under protest and filing a statement with the collector...." *Id.* Thus *Pitman* is inapposite to our analysis. Here, Mittelstadt challenges the assessment of court costs by invoking the specific statute intended for that purpose. Section 514.270 states:

> Any person aggrieved by the taxation of a bill of costs may, upon application, have the same retaxed by the court in which the action or proceeding was had, and in such retaxation all errors shall be corrected by the court; and if the party aggrieved shall have paid any unlawful charge, by reason of the first taxation, the clerk shall pay the costs of retaxation, and also to the party aggrieved the amount which he may have paid by reason of the allowing of such unlawful charge.

Statutes passed by the legislature are expressions of public policy. *State ex rel. Equality Sav. & Bldg. Ass'n v. Brown,* 334 Mo. 781, 68 S.W.2d 55, 59 (1934). The clear intent of the General Assembly expressed in § 514.270 is to enable citizens to challenge unauthorized court costs and obtain a refund, absent any requirement to pay under protest. Here, as in *Huch, Eisel,* and *Carpenter,* accepting the voluntary payment doctrine as an affirmative defense would undermine the protections afforded by the statute, ignore legislative intent, and contravene public policy. The trial court erred in dismissing Mittelstadt's Count I claims under the voluntary payment doctrine. Point I is granted.[7]

### Hancock Amendment (Point II)

■ For their second point, Appellants submit that the trial court erred in dismissing their Count III claim alleging that Respondents' imposition and collection of court costs violates the Hancock Amendment. Respondents counter that court costs do not constitute a local tax within the meaning of the Amendment. We agree.

■ "[T]he Hancock Amendment is intended to prohibit municipal fee increases that are taxes in everything but name." *Arbor Inv. Co., LLC v. City of Hermann,* 341 S.W.3d 673, 682 (Mo. 2011). The Amendment states in pertinent part:

> Counties and other political subdivisions are hereby prohibited from levying any tax, license or fees, not authorized by law, charter or self-enforcing provisions of the constitution ... or from increasing the current levy of an existing tax, license or fees, above that current levy authorized by law or charter ... without the approval of the required majority of the qualified voters of that county or

---

7. Alternatively, Respondents argue that we should uphold the trial court's dismissal of Mittelstadt's claims, because she waived her claims by not contesting court costs in the underlying lawsuit. Respondents cite *In re J.P.,* holding that "failure to file an objection to a cost bill or memorandum may constitute a waiver of the right to contest taxation of questioned items." 947 S.W.2d 442, 445 (Mo. App. W.D. 1997). As discussed herein, Mittelstadt may pursue such action in her delinquency case. "The trial court retains jurisdiction to exercise its ministerial duty to correct errors made by the clerk in taxing court costs that do not require judicial determination or investigation." *Solberg v. Graven,* 174 S.W.3d 695, 701 (Mo. App. S.D. 2005).

other political subdivision voting thereon.

Mo. Const. art X, § 22(a).

■ To determine whether a charge is a tax under the Hancock Amendment and thus subject to voter approval, courts must consider five factors set forth in *Keller v. Marion County Ambulance Dist.*, 820 S.W.2d 301 (Mo. 1991). Those factors are: (1) when the fee is paid; (2) who pays it; (3) whether the amount relates to the level of goods or services provided; (4) whether the fee relates to a government-provided good or service; and (5) whether the activity has historically and exclusively been provided by the government. *Id.* at 304 n. 10. Each party claims to prevail on these factors. Appellants equate the costs to a tax because they were included and paid with their local property tax bills and collected by a City official charged with collecting local taxes. As a threshold matter, however, Respondents submit that the costs are not a *local* fee in the first place. We agree and find that fact dispositive, obviating a *Keller* analysis. As Respondents correctly note, the costs are imposed by state statute and Supreme Court operating rules and, once remitted to Circuit Clerk, are redistributed to various state and local funds as directed by those authorities. Section 488.012.2 provides:

> The supreme court shall set the amount of court costs authorized by statute, at levels to produce revenue which shall not substantially exceed the total of the proportion of the costs associated with administration of the judicial system defrayed by fees, miscellaneous charges and surcharges.

Pursuant to this legislative authority, Missouri Supreme Court Operating Rule 21.01

dictates the amount of costs, fees, miscellaneous charges, and surcharges associated with court filings and instructs that "[t]he court clerk shall collect and disburse the above fees."[8]

*Ehlmann v. Nixon* is illustrative. 323 S.W.3d 787 (Mo. 2010). There, the Missouri Supreme Court addressed whether a statute creating a Deputy Sheriff Supplementation Fund violated article X, § 10(a) of the Missouri Constitution, which prohibits the General Assembly from imposing taxes on "counties or other political subdivisions or upon the inhabitants or property thereof for municipal, county or other corporate purposes." Under the challenged statute, court-related charges were collected by the sheriff, paid into the county treasury, and then remitted to the state treasury earmarked for the special fund. The Court determined that the statute did not create a tax on a county or municipality within the meaning of article X, § 10(a) because the disputed funds were classified as state money from the time they were collected. *Id.* at 789. The county was "simply a conduit" to the state treasurer. *Id.*

Although *Ehlmann* involved a different constitutional provision, the Court's logic applies with equal cogency here. It is undisputed that Collector was merely a conduit for the transmittal of court costs from Appellants to Circuit Clerk to various statutorily-created funds for the benefit of the state judicial system. Thus, the costs cannot constitute a local tax within the meaning of the Hancock Amendment. The court did not err in dismissing Appellants' Count III. Point II is denied.

---

8. For example, $10 goes to the State Courts Administrator for a legal services fund (§ 488.031 and § 477.650); $25 goes to the Department of Revenue for court reporting (Rules 21.01(a)(9) and 21.02(b) ), record-keeping (§ 488.027 and Rules 21.01(a)(4) and 21/02(c)), and domestic relations resolution funding (§ 488.635 and § 452.552).

*Legality of Court Costs, Exclusivity of Remedy, & Collector's Role (Point III)*

██ For point III, Appellants assert that the court erred in dismissing Wiley's claims for declaratory judgment and refund because the court costs taxed in his case are not authorized by Missouri law.[9] As a threshold matter, Respondents counter that the propriety of Appellants' court costs must be litigated before the court in the underlying delinquency case and not in a separate declaratory action. The trial court agreed, as do we, but the court did not grant summary judgment on this basis; instead it ruled on the merits. In doing so, the trial court reached the right result for the wrong reason. We must affirm if summary judgment was proper under any theory. *Auto Owners Mutual Insurance Co. v. Sugar Creek Memorial Post No. 3976*, 123 S.W.3d 183, 190 (Mo. App. W.D. 2003). Therefore, we affirm the trial court's summary judgment on this point, not based on its conclusion that the court costs were lawful, but because Appellants must assert their challenge in the underlying delinquency case.

██ Under Missouri's Declaratory Judgment Act, circuit courts have the authority to "declare rights, status, and other legal relations whether or not further relief is or could be claimed." § 527.010. The Act is remedial; "its purpose is to afford relief from uncertainty and insecurity . . . and is to be liberally construed and administered." *Crown Diversified Holdings, LLC v. St. Louis Cnty.*, 452 S.W.3d 226, 230 (Mo. App. E.D. 2014). However, the Act is not a general panacea for all real and imaginary legal ills. *Id.* at 231. "[E]xcept in exceptional circumstances plainly appearing, it is not to be used and applied where an adequate remedy already exists." *Cronin v. State Farm Fire &*

*Cas. Co.*, 958 S.W.2d 583, 587 (Mo. App. W.D. 1997). Such a remedy exists in § 514.270: "Any person aggrieved by the taxation of a bill of costs may, upon application, have the same retaxed *by the court in which the action or proceeding was had*, and in such retaxation all errors shall be corrected by the court."

██ In applying § 514.270, Missouri courts have long recognized that "[w]here a party complains that the judgment taxing the costs is wrong, for any reason, he must, to obtain relief, lodge his complaint with the court rendering such judgment." *Turner v. Butler*, 66 Mo.App. 380, 386 (Mo. App. K.C. 1896). "If a party contests a category or specific item of costs, the remedy is by motion to retax in the court of the alleged error." *In re J.P.*, 947 S.W.2d 442, 444 (Mo. App. W.D. 1997). "Once court costs are taxed by the clerk, any party may file a motion to retax costs so the trial court can review the clerk's bill of costs." *Solberg v. Graven*, 174 S.W.3d 695, 701 (Mo. App. S.D. 2005). "The trial court retains jurisdiction to exercise its ministerial duty to correct errors made by the clerk in taxing court costs." *Id.* "If the court denies the party's motion to retax costs, the party can then appeal such denial to this Court, because the denial of a Rule 77.05 motion to retax costs is an appealable order." *Id.* Accord *Montoya v. A-1 Mufflers. Inc.*, 331 S.W.3d 702, 704 (Mo. App. W.D. 2011).

██ "[W]here a statute creates a right or liability that did not exist at common law or under prior statutes, and also provides a specific remedy for the enforcement thereof, as a general rule such statutory remedy is exclusive." *Wear v. Walker*, 800 S.W.2d 99, 103 (Mo. App.

---

9. As discussed above, Mittelstadt's claims are not barred by the voluntary payment, so our analysis of this point applies equally to both Appellants.

S.D. 1990) (citing *Gales v. Weldon,* 282 S.W.2d 522, 529 (Mo. 1955)). Because § 514.270 creates a statutory right and provides a specific remedy, that remedy is exclusive. The trial court's summary judgment must be affirmed in that Appellants' claims in this separate declaratory judgment action are precluded by virtue of an exclusive remedy in their underlying cases. Appellants must contest their court costs in their respective delinquency cases. In any such proceedings, however, the court will not be bound by the trial court's substantive legal conclusions here. We vacate those determinations because the trial court erred in reaching the merits, which must be examined in accordance with § 514.270 and other applicable statutes.[10]

Finally, we must address Collector's practice of withholding property tax "paid" receipts pending collection of court costs yet to be assessed by Circuit Clerk. Numerous sections of Chapter 514 make clear that the Circuit Clerk is charged with the assessment, correction, collection, and redistribution of court costs. The clerk shall tax and subscribe all bills of costs arising in any cause and shall in no case allow any item or charge unless the service was actually performed. § 514.260. The clerks who are responsible for collecting court costs shall strictly examine the accounts of all court costs accruing during any suit and shall correct the same if wrong in any manner and, if a litigant neglects or refuses to pay, then the clerk shall take such action to collect such fees as provided in Chapter 488. § 514.330. From there, cer-

tain sections of Chapter 488 imply that a clerk may delegate the task of collection. For example, the clerk "shall disburse court costs collected by or under the authority of the clerk in the manner provided by supreme court rule." § 488.018.1. No court "or any entity collecting court costs on their behalf" is required to refund overpayment of less than five dollars. § 488.014. However, even if there is statutory authority for Collector's role as Circuit Clerk's collection agent, Respondents cite no authority, and we have found none, empowering Collector to withhold "paid" receipts pending collection of court costs that Circuit Clerk has yet not assessed.

Appellants' point III is granted in part and denied in part. The trial court erred in concluding that Appellants' court costs were lawful, as that issue must be resolved by the court in Appellants' delinquency cases. That determination is vacated. The trial court further erred in deeming Collector's practices lawful. That determination is reversed and remanded for entry of declaratory judgment and an injunction in favor of Appellants. Ultimately, however, the trial court did not err in granting summary judgment in favor of Respondents, as Appellants must challenge their court costs as provided by § 514.270.

*Class Certification (Point IV)*

In point IV, Appellants contend that the trial court erred in denying class certification because "[a] class action is a superior method of addressing the thousands of cases in which taxpayers are entitled to refunds under § 514.270." Respondents did not respond to the merits of this point

---

**10.** For example, in count I of their petition, Appellants itemize several standard fees that, they claim, should not have been taxed in their cases because such fees are not collectible when waived or paid by a municipality. See *e.g.,* § 488.024, § 488.026, § 488.027, § 488.031, § 488.435, § 488.447. Pursuant to § 140.730, the Collector pays no costs in delinquency cases. In short, Appellants allege that they were taxed for fees that Collector never incurred, and in blanket fashion. Appellants further allege that, as standard practice, Collector assesses these costs upon filing suit and before taxpayers receive service of the delinquency petition. We do not opine on these claims.

but moved to strike and dismiss it for failure to comply with the appellate briefing requirements of Rule 84.04. We agree that Appellants' brief on this point is not sufficiently developed for this court's consideration. Point IV is therefore dismissed.[11]

**Conclusion**

The trial court erred in dismissing Mittelstadt's claims based on the voluntary payment doctrine (point I). The court did not err in dismissing Appellants' challenge to the court costs based on the Hancock Amendment (point II). As to the lawfulness of Appellants' court costs and their entitlement to a refund (point III), the trial court erred in reaching a conclusion on the merits that the taxation of court costs was lawful, but the court did not err in granting summary judgment because § 514.270 provides the exclusive avenue for examining those claims. Both Appellants may seek recourse accordingly in their respective underlying delinquency cases.[12] As to the lawfulness of Collector's practice of assessing court costs at the time of filing and withholding tax receipts pending collection, the trial court erred in granting summary judgment in favor of Respondents. That particular judgment is reversed and remanded for entry of declaratory judgment and corresponding injunctive relief in favor of Appellants. The trial court's judgment is affirmed in part, reversed in part, vacated in part, dismissed in part, and remanded for further action consistent with this opinion.

Lawrence E. Mooney, P.J. and Clifford H. Ahrens, Senior J. concur.

---

11. Even were we to review Appellants' point IV, we question whether they could satisfy the criteria for a class action given the particularity with which § 514.330 requires a clerk to "strictly examine the accounts of all court costs accruing during the progress of any civil suit" and "correct the same if wrong in any manner."

12. § 514.270 does not establish a time limit in which to file a motion seeking a retaxation of costs. *See Fisher v. Spray Planes, Inc.*, 814 S.W.2d 628, 633–34 (Mo. App. E.D. 1991); *Solberg*, 174 S.W.3d at 701; *Starling v. Union Pacific R. Co.*, 22 S.W.3d 213, 215–16 (Mo. App. W.D. 2000) (recognizing trial court retains authority to enter an order assessing statutory costs based on its review of the court clerk's action assessing such costs, even after a plaintiff has dismissed his suit). Within that proceeding, the statutory framework requires a strict examination of all court costs accruing during the progress of any suit, and both the Circuit Clerk and the court are charged with correcting any error in taxation, all in accordance with the statutes and Supreme Court operating rules authorizing specific line items, as applied to the procedural posture of Appellants' individual cases. §§ 514.270 and 514.330.