

# In the Missouri Court of Appeals
# Eastern District

## DIVISION THREE

| | | |
|---|---|---|
| CITY OF ST. LOUIS, MISSOURI, | ) | No. ED112415 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court of |
| | ) | the City of St. Louis |
| vs. | ) | |
| | ) | Honorable Jason M. Sengheiser |
| RYAN BERTELS, ET AL., | ) | |
| | ) | |
| Respondents. | ) | Filed: September 17, 2024 |

### Introduction

The City of St. Louis ("the City") appeals the circuit court's entry of summary judgment in Ryan Bertels' and Dana Hibbs' (collectively, "Defendants") favor on its professional malpractice claim seeking to recoup approximately $1.7 million in damages the City and the Board of Police Commissioners ("the Board") were ordered to pay in underlying litigation after a default judgment was entered. The City raises three points on appeal. In Point I, the City argues the circuit court erred in entering summary judgment in Defendants' favor because the official capacity claim asserted against a police officer constituted a claim against the Board. In Point II, the City argues the circuit court erred in entering summary judgment in Defendants' favor because they are not entitled to official immunity because they had a statutorily-imposed, ministerial duty to defend the Board. Finally, in Point III, the City argues the circuit court erred in taxing costs to it, because as a municipality and extension of the State, it is not liable to pay costs, even when it

does not prevail. This Court holds even if Defendants had to defend the Board from the entry of the default judgment, Defendants were officially immune from suit for their actions in determining if and how to defend the Board. Points I and II are denied. Because there is no statutory authority to tax costs against the City in this action, Point III is granted. The circuit court's judgment is affirmed in part and reversed in part.

## Factual and Procedural Background

These parties have been engaged in protracted litigation from actions taken by St. Louis Metropolitan Police Officers Ryan Cousins ("Cousins") and Reginald Williams ("Williams") against Michael J. Banks ("Banks") in July 2002, at which time Banks was threatened, robbed, and falsely arrested. Banks was acquitted of all charges. Williams was prosecuted and convicted in 2004 of committing similar acts. *State v. Williams*, 177 F.App'x 513, 514 (8th Cir. 2006) (affirming conviction and sentence).

### *Underlying Judgment*

In 2005, Banks and his wife (collectively, "Plaintiffs") sued the Board, naming individual members in their official capacity, and Williams and Cousins, in their individual and official capacities, for claims related to Banks' treatment in July 2002. The Board's General Counsel requested the Attorney General's Office ("AGO") defend this action on the Board's and Cousin's behalf under the state legal expense fund ("SLEF") statute.[1] Defendants were employed as assistant attorneys general at this time. The AGO assigned Bertels to represent the Board and Hibbs to represent Cousins. The Board did not request—and the AGO did not assign—any assistant attorney general to represent Williams. Before Defendants deposed Williams, they asked

---

[1] Section 105.716.1 states, "[a]ny investigation, defense, negotiation, or compromise of any claim covered by sections 105.711 to 105.726 shall be conducted by the attorney general[.]" All statutory references are to RSMo Cum. Supp. 2005. *See also State ex rel. Hawley v. City of St. Louis*, 531 S.W.3d 602, 604–05 (Mo. App. E.D. 2017) (providing a detailed history of SLEF and how the City became the successor-in-interest to the Board).

their supervisor, the AGO's Chief Litigation Counsel, what they should do if Williams asked for representation.[2] The Chief Litigation Counsel responded, "If this is a police case, the Board has to tender for the officers and has not done so." Bertels explained to Williams on the record before deposing him he was not represented by either Bertels or Hibbs, to which Williams stated he understood.

In June 2008, Plaintiffs dismissed the Board as a party without prejudice after the Board moved for summary judgment. The dismissal indicated Plaintiffs would file an amended petition. In August 2008, Plaintiffs filed their first amended petition against Williams and Cousins in their individual and official capacities, raising substantially the same claims as the original petition. Plaintiffs' claims against Cousins were dismissed with prejudice after a settlement agreement was reached.

In January 2009, Plaintiffs filed their second amended petition naming only Williams in his individual and official capacities. Although not named as a party, the Board was served with the second amended petition. Defendants, a Board paralegal ("Paralegal"), and the AGO's Chief Litigation Counsel communicated by email to determine how to proceed after the Board received the second amended petition. Paralegal emailed Chief Litigation Counsel stating she was unsure if the Board had to "re-tender defense … but to be safe" she asked the AGO to represent the Board. In a later email, Paralegal explained Williams was no longer a police officer, and had been convicted and incarcerated for crimes committed as a police officer. Paralegal stated, "The Board will not request legal representation for him if he is served in prison." Chief Litigation Counsel expressed confusion as to why the Board was served since it was not named as a defendant, but

---

[2] Three individuals served as the AGO's Chief Litigation Counsel or Acting Chief Litigation Counsel and supervised Defendants before the default judgment was entered. This Court refers to all three individuals as Chief Litigation Counsel to avoid confusion.

responded he did not think there was "anything to defend here" and to let him know if the Board's General Counsel "sees something here" he did not. Hibbs stated she was unsure why the Board was served because it was not a named party nor did Plaintiffs request relief from the Board. Later, Hibbs stated, "I suggested to [Bertels] earlier, and again this is just my thought, that the Board does not need to respond to this petition since they are not a named defendant." No responsive pleadings to the second amended petition were filed on the Board's behalf.

On April 3, 2009, Plaintiffs moved for default judgment and set the matter for a hearing on April 27, 2009. Plaintiffs' counsel notified Bertels "as a courtesy" of the default and inquiry, along with the date and time of the hearing, and stated he was "invited to attend." Bertels provided Chief Litigation Counsel a memorandum analyzing the default judgment's implications for the Board the same day he received notice of the default and inquiry. The memorandum stated, "It would seem that the [P]laintiff[s are] attempting to get a default judgment against Williams. The issue is whether [Banks] will then try to collect that default judgment from us." Bertels discussed his and Hibbs' client representations and how neither of them represented Williams. Bertels explained Williams never requested either the Board or the AGO represent him. Bertels further discussed when the second amended petition was filed, he spoke with Chief Litigation Counsel who said "not to worry about it" because Williams was the only named defendant. Chief Litigation Counsel emailed Defendants, stating, "We intend to take the position that neither the officer nor the Board, ever tendered defense nor requested the AGO represent Williams (the bad actor) in the underlying matter…. As such, we do not intend to attend or otherwise participate at the default hearing." Chief Litigation Counsel stated he intended to communicate this position to the Board's General Counsel.

Hibbs was directed to "attend and observe" the default judgment to see what the testimony entailed. Hibbs sat in the courtroom behind the bar and did not speak. Hibbs emailed Bertels, Chief Litigation Counsel, Paralegal, and the Board's General Counsel summarizing the proceedings. Hibbs stated there was no testimony regarding damages against the Board or the Board's status in the second amended petition. The circuit court entered a default judgment against Williams, in his individual and official capacities, and awarded Plaintiffs $1,487,533.49.

From April 2012 through November 2017, Plaintiffs, the Board, and the City litigated which entity was obligated to pay the default judgment. The City and the Board argued they were not liable because the judgment was entered against Williams only or they lacked notice or an opportunity to be heard before liability was imposed. *See Banks v. Slay*, 410 S.W.3d 767 (Mo. App. ED. 2013); *Banks v. Slay*, 9 F.Supp.3d 1069 (E.D. Mo. 2014); *Banks v. Slay*, 789 F.3d 919 (8th Cir. 2015); *Banks v. Slay*, 196 F.Supp.3d 1021 (E.D. Mo. 2016); and *Banks v. Slay*, 875 F.3d 876 (8th Cir. 2017). These arguments were rejected. The City paid approximately $1.7 million to Plaintiffs and their counsel as the Board's successor-in-interest.

*Legal Malpractice Litigation*

In April 2018, the City sued Defendants for legal malpractice. In June 2022, the City filed its first amended petition against Defendants in their personal capacities, alleging they "were professionally negligent and committed legal malpractice in their representation of the Board and all of its employees named in the suit." The City averred Defendants had an attorney-client relationship with the Board, and, as its counsel, Defendants had a statutorily-mandated duty to represent and defend the Board at the time the default judgment was entered. The City alleged Defendants breached their duty of care by: (1) not responding or answering the second amended petition against the Board, pled as Williams in his official capacity; (2) not moving for summary

5

judgment again on the Board's behalf; (3) allowing a default judgment to be entered against the Board; (4) not recognizing or ignoring relevant caselaw; (5) not removing the case to federal court; and (6) breaching their ministerial duty to represent and defend the Board, pled as Williams in his official capacity. Defendants moved to dismiss the City's petition, which was overruled.

Defendants moved for summary judgment on several grounds, arguing: (1) they did not have an attorney-client relationship with Williams; (2) they were entitled to official immunity; (3) the City's claim was time-barred; (4) the Board ratified Defendants' decision not to represent Williams; and (5) the judgment was unenforceable under the Full Faith and Credit Clause. The City opposed the motion, arguing: (1) Defendants had a duty to represent the Board, pled as Williams in his official capacity, because the claim against Williams was a claim against the Board; (2) not representing the Board, pled as Williams in his official capacity, breached Defendants' statutorily-mandated ministerial duty to represent the Board; (3) Defendants had an attorney-client relationship with the Board at the time the default judgment was entered against it; (4) the City's claim was timely; (5) Defendants' ratification argument failed as a matter of law; and (6) collateral estoppel did not bar the City's claims.

The circuit court sustained Defendants' motion and entered judgment in their favor. The circuit court found the City would be unable "to produce evidence supporting its legal malpractice claim against Defendants based on their failure to represent and defend … Williams in the [Plaintiffs' underlying] matter" because "neither Bertels nor Hibbs represented Williams in any capacity" in the underlying litigation as there was no evidence the Board requested the AGO to represent him. The circuit court further found even if the statute applied to Williams' defense despite the Board's failure to request representation for him, the statute imposed a duty only upon the attorney general, not upon Bertels or Hibbs individually. The circuit court taxed costs against

6

the City. The City moved to amend or modify the judgment regarding the taxed costs, which the circuit court overruled by inaction. Rule 78.06. This appeal follows.

## Discussion

*Standard of Review for Points I & II*

"The standard of review on appeal regarding summary judgment is essentially *de novo.*" *Kroner Invs., LLC v. Dann*, 583 S.W.3d 126, 128 (Mo. App. E.D. 2019) (citing *Foster v. St. Louis Cnty.*, 239 S.W.3d 599, 601 (Mo. banc 2007)). On appeal, summary judgment will be upheld if there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. *Id.* "Because the role of this Court is to determine whether or not the [circuit] court reached a proper result, we will uphold an order granting summary judgment if it is sustainable on any theory." *Pecos I, LLC v. Meyer*, 655 S.W.3d 579, 585 (Mo. App. E.D. 2022) (quoting *Wiley v. Daly*, 472 S.W.3d 257, 261 (Mo. App. E.D. 2015)). Hence, this Court will affirm the circuit court's entry of summary judgment "based on any ground raised in the motion and supported by the accompanying summary judgment record." *Loerch v. City of Union, Mo.*, 643 S.W.3d 597, 602 (Mo. App. E.D. 2022).

*Points I & II: Official Capacity & Official Immunity*
*Party Positions*

Because the City's first two points are interrelated, they will be addressed together. In Point I, the City argues the circuit court erred in entering summary judgment in Defendants' favor because the official capacity claim brought against Williams was a claim against the Board. Defendants argue they are entitled to absolute immunity because they were acting as assistant attorneys general defending government officials against 42 U.S.C. § 1983 actions.[3] Defendants

---

[3] As conceded during oral argument, Defendants did not argue they were entitled to absolute immunity for their representation of government officials when they moved for summary judgment. "Appellate review of summary judgment is limited to the issues presented before the trial court." *Weber v. Fed. Home Loan Mortg. Corp.*, 675

also argue the circuit court correctly held neither Bertels nor Hibbs had an attorney-client relationship with Williams as a matter of law.

In Point II, the City argues the circuit court erred in entering summary judgment in Defendants' favor because Defendants had a ministerial duty to defend the Board and prevent the default judgment from being entered. The City contends the Board requested representation and defense from the AGO under section 105.726.4, and Defendants represented the Board at the time the default judgment was entered. Defendants argue they are entitled to official immunity because decisions made during Bertels' representation of the Board after the second amended petition was filed were not ministerial and should be afforded immunity if Defendants were acting within the scope of their authority and without malice.

*Analysis*

The City frames the issues to be addressed as whether Defendants had an attorney-client relationship with the Board, pled as an official capacity claim against Williams, and whether Defendants' failure to take steps to prevent the entry of default judgment against Williams—which the City ultimately had to pay as the Board's successor-in-interest—constituted a ministerial duty so that Defendants are not entitled to official immunity from legal malpractice. "The elements of a legal malpractice action are: 1) an attorney-client relationship; 2) defendant acted negligently or in breach of contract; 3) defendant's acts were the proximate cause of the plaintiff's damages; and 4) but for defendant's conduct the plaintiff would have succeeded in prosecution of their

---

S.W.3d 728, 733 (Mo. App. E.D. 2023). "Parties are bound by the position they took in the trial court and will not be heard on a different theory on appeal." *Id*. (quoting *Rapp v. Eagle Plumbing, Inc.*, 440 S.W.3d 519, 523 (Mo. App. E.D. 2014)). Further, this Court "will generally not convict a lower court of error on an issue that was not put before it to decide." *Clarksboro, LLC v. City of Overland*, 678 S.W.3d 139, 144–45 (Mo. App. E.D. 2023) (quoting *Smith v. Shaw*, 159 S.W.3d 830, 835 (Mo. banc 2005)). This Court finds Defendants waived their absolute immunity argument by failing to present it to the circuit court and declines to review it on appeal. *Id*.

underlying claim." *Juan v. Growe*, 547 S.W.3d 585, 591 (Mo. App. E.D. 2018) (citing *Nail v. Husch Blackwell Sanders, LLP*, 436 S.W.3d 556, 561 (Mo. banc 2014)).

This Court agrees with the City's initial contention the official capacity claim against Williams constituted a claim against the Board. *See Brandon v. Holt*, 469 U.S. 464, 472, n.21, 105 S. Ct. 873, 878 n.21, 83 L.Ed.2d 878 (1985) (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 n.55, 98 S. Ct. 2018, 2035 n.55, 56 L.Ed.2d 611 (1978)) (stating "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent"). Thus, "a judgment against a public servant 'in his official capacity' imposes liability on the entity he represents provided, of course, the public entity received notice and an opportunity to respond." *Id*. at 471–72. The City contends the circuit court's "fundamental misunderstanding of the nature of official-capacity claims" resulted in "the irrelevant finding that the City could not produce evidence of an attorney-client relationship between Defendants and *Williams*." (emphasis in original). The City argues because the Board requested representation and defense from the AGO, section 105.726.4 applied "to *the Board's* defense and required Defendants to defend the *Board*." (emphasis in original).

Section 105.716.1 requires the attorney general to defend any claim covered by sections 105.711 to 105.726. Section 105.726.4 states in relevant part, "If the representation of the attorney general is requested by a board of police commissioners, the attorney general shall represent … [or] defend … all claims under sections 105.711 to 105.726 for the board of police commissioners [or] any police officer … acting or purporting to act on their behalf." This statute also permits the attorney general to "establish procedures by rules promulgated under chapter 536 under which claims must be referred for the attorney general's representation." *Id*. *See* 15 C.S.R.

§ 60-14.040 (rules promulgated prescribing the procedures for requesting representation under section 105.726).

This Court need not resolve if the circuit court erroneously focused on whether an attorney-client relationship existed between Defendants and Williams or whether a request to represent the Board constituted a request for the AGO to defend Williams in his official capacity as well. Even if this Court assumes, without deciding, Defendants had an attorney-client relationship with the Board such that they had to defend it from Plaintiffs' official capacity claims against Williams, the record demonstrates summary judgment was appropriate because Defendants were entitled to official immunity for their actions.

"'Immunity' connotes not only immunity from judgment but also immunity from suit." *Laughlin v. Perry*, 604 S.W.3d 621, 633 (Mo. banc 2020) (quoting *State ex rel. Alsup v. Kanatzar*, 588 S.W.3d 187, 190 (Mo. banc 2019)). Missouri courts have long held official immunity "protects a public official from liability if that official acts within the course of his [or her] official duties and without malice." *Alsup*, 588 S.W.3d at 190. "Courts applying the doctrine of official immunity must be cautious not to construe it 'too narrowly lest they frustrate the need for relieving public servants of the threat of burdensome litigation.'" *Laughlin*, 604 S.W.3d at 625–26 (quoting *Alsup*, 588 S.W.3d at 191).

The parties do not dispute Defendants were public officials acting within the scope of their authority when the Board was served with the second amended petition. Furthermore, the City does not allege malice. Yet, Defendants "are not entitled to official immunity merely because they are state or public employees conducting official duties." *Id*. at 627. "Official immunity only 'protects public employees from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts.'" *Id*. (quoting *Southers v.*

10

*City of Farmington*, 263 S.W.3d 603, 610 (Mo. banc 2008)). "The official immunity doctrine does not protect public employees for alleged acts of negligence for the performance of ministerial duties." *Id*. The City contends because the Board requested AGO representation, section 105.726.4 mandated Defendants represent and defend the Board to prevent the default judgment from being entered. Hence, this Court must determine whether Defendants' decisions after the Board was served with the second amended petition were discretionary or ministerial acts.

"Whether an act can be characterized as discretionary depends on the degree of reason and judgment required." *Southers*, 263 S.W.3d at 610. "A discretionary act requires the exercise of reason in the adaption of means to an end and discretion in determining how or whether an act should be done or course pursued." *Id*. In contrast, a ministerial act is defined as:

> Generally, a ministerial act has long been defined as merely clerical. And this Court has noted that a ministerial duty compels a task of such a routine and mundane nature that it is likely to be delegated to subordinate officials. For more than a century, this Court has held that a ministerial or clerical duty is one in which a certain act is to be performed upon a given state of facts in a prescribed manner in obedience to the mandate of legal authority, and without regard to … judgment or opinion concerning the propriety or impropriety of the act to be performed. Thus, the central question is whether there is any room whatsoever for variation in when and how a particular task can be done. If so, that task–by definition–is not ministerial.

*Alsup*, 588 S.W.3d at 191 (internal citations and quotations omitted). "The central inquiry is not whether the law confers a duty to act but, instead, whether the public official retains *any* discretion in completing an act[.]" *State ex rel. Morales v. Alessi*, 679 S.W.3d 467, 472 (Mo. banc 2023) (emphasis in original).

This Court finds *Laughlin* directly on point to resolve this dispute. In *Laughlin*, a client sued his public defenders for legal malpractice when they did not assert a meritorious jurisdictional defense which he informed them he wished to raise. *Laughlin*, 604 S.W.3d at 624. After holding the public defenders were public employees entitled to assert official immunity, *id*. at 625–27, the

11

Missouri Supreme Court addressed whether the public defenders' failure to assert the defense was a discretionary or ministerial act. The public defenders contended "practically any decision or action taken by an attorney in representing his or her client is discretionary in nature, including which defenses to assert at trial" while the client "characterize[d] the jurisdictional challenge as a ministerial task because, once he advised [the public defenders] of his desire to challenge the circuit court's jurisdiction, they had no discretion to refuse to explore that defense." *Id.* at 628. The Court held the public defenders "had no clear and unequivocal duty to assert the jurisdictional challenge" because "[a]s a practical matter, virtually any decision or action taken by an attorney during trial involves the exercise of professional judgment and is clearly discretionary in nature." *Id.* (quoting *Kuehne v. Hogan*, 321 S.W.3d 337, 347 n.8 (Mo. App. W.D. 2010) (Ellis, J., concurring)). The Court further explained, "[i]t is undisputed attorneys exercise discretion and judgment in formulating which strategies and defenses to present on their clients' behalf." *Id.* "[D]ecisions concerning which defenses to raise … 'requires the exercise of reason in adaption of means to an end and discretion in determining how or whether an act should be done or course pursued.'" *Id.* (quoting *Southers*, 263 S.W.3d at 610).

The City argues *Laughlin* is inapposite because Defendants "did not strategically decide to forego certain arguments in favor of others" but instead, "simply failed" to represent and defend the Board as section 105.726.4 mandates. This Court disagrees. Section 105.726.4 required the AGO to represent and defend the Board if it requested representation. However, "[t]he fact that a statute or regulation may confer authority—or even a duty—to act in a given situation says nothing about whether the act authorized or compelled is the sort of ministerial or clerical act to which official immunity does not extend." *Morales*, 679 S.W.3d at 472 (quoting *Alsup*, 588 S.W.3d at 192). "Thus, the relevant inquiry is not whether the law authorizes, regulates, or requires an action.

Instead, it is whether the action itself is ministerial or clerical." *Id.* "And, even when a clerical or ministerial act appears to be authorized or required by statute, official immunity will still apply if the official retains authority to decide when and how that act is to be done." *Id.* (quoting *Alsup*, 588 S.W.3d at 193).

The record does not support a finding Defendants declined to represent or defend the Board as mandated by section 105.726.4. To the contrary, Defendants, acting at the direction and behest of their supervisors, exercised discretionary, professional judgment in deciding when and how to respond when the Board was served with the second amended petition.[4] Defendants' supervisor, the AGO's Chief Litigation Counsel, spoke to Paralegal after the Board was served with the second amended petition. Chief Litigation Counsel expressed confusion as to why the Board was served since it was not named as a defendant, but responded he did not think there was "anything to defend here" and to let him know if the Board's General Counsel "sees something here" he did not. Hibbs emailed, "I suggested to [Bertels] earlier, and again this is just my thought, that the Board does not need to respond to this petition since they are not a named defendant." After this discussion, a decision was made to not file responsive pleadings to the second amended petition on the Board's behalf. Later, when Bertels received the "courtesy" notice of Plaintiffs' default and inquiry hearing, he immediately provided Chief Litigation Counsel a memorandum analyzing the default judgment's implications for the Board, specifically raising the issue of who would be liable for any default judgment against Williams. Chief Litigation Counsel responded, "We intend to take the position that neither the officer nor the Board, ever tendered defense nor requested the AGO represent Williams (the bad actor) in the underlying matter…. As such, we do not intend to attend or otherwise participate at the default hearing." Thus, the record clearly demonstrates Defendants

---

[4] Defendants both testified they had no authority to make final decisions regarding the underlying litigation.

exercised discretion and judgment in formulating strategies regarding the second amended petition and did not breach a merely ministerial duty to defend the Board under the statute. Defendants were entitled to official immunity from suit for these discretionary actions. The circuit court did not err in entering summary judgment in Defendants' favor.

Points I and II are denied.

*Point III:  Costs Taxed Against the City*
*Party Positions*

In Point III, the City argues the circuit court erred in ordering it to pay Defendants' court costs. The City asserts a municipality is an extension of the State, and the State is not liable for costs even when it does not prevail. Defendants did not respond to Point III in their respondent's brief.

*Standard of Review*

"Courts possess 'no inherent power to award costs.'" *State ex rel. Merrell v. Carter*, 518 S.W.3d 798, 800 (Mo. banc 2017). "Costs may by awarded only pursuant to express statutory authority." *Wilson v. City of Kan. City*, 598 S.W.3d 888, 894 (Mo. banc 2020). "Express statutory authority must be clear, definite, and unambiguous." *Id*. (quoting *State v. Richey*, 569 S.W.3d 420, 423 (Mo. banc 2019)). Statutes conferring the power to tax costs are construed strictly. *Merrell*, 518 S.W.3d at 800. "Whether a statute authorizes an award of costs is a question of statutory interpretation." *Wilson*, 598 S.W.3d at 894. Questions of statutory interpretation are reviewed *de novo*. *Roesing v. Dir. of Revenue*, 573 S.W.3d 634, 637 (Mo. banc 2019).

*Analysis*

"Absent statutory authority, costs cannot be recovered in state courts from the state of Missouri or its agencies or officials." *Planned Parenthood of St. Louis Region v. Dep't of Soc. Serv., Div. of Med. Servs.*, 602 S.W.3d 201, 212 (Mo. banc 2020) (quoting *Richardson v. State*

14

*Highway & Transp. Comm'n*, 863 S.W.2d 876, 882 (Mo. banc 1993)). "When the legislature waives sovereign immunity regarding costs, it does so explicitly." *St. Louis Cnty. v. State*, 482 S.W.3d 842, 849 (Mo. App. W.D. 2016). "A municipality is created by the state sovereign and is an extension of the state." *State ex rel. RAS Inv., Inc. v. Landon*, 75 S.W.3d 847, 850 (Mo. App. W.D. 2002)). "Numerous cases hold that neither the state nor its agencies may be assessed court costs even [when] the state agency does not prevail in the litigation." *Id.* (citing *Mauer v. Bd. of Trs. of Mo. State Emp. Ret. Sys.*, 762 S.W.2d 517, 521 (Mo. App. W.D. 1988) (collecting cases)).

The City, as a municipality, is an extension of the State. The City contends—and Defendants conceded at oral argument—no statutory authority authorizes the awarding or taxing of costs against the City in this case. Because no statute authorizes the circuit court to tax costs against the City in this action, it was reversible error to tax costs against it. *Planned Parenthood*, 602 S.W.3d at 213. The judgment taxing costs against the City is reversed. Point III is granted.

### Conclusion

The circuit court's judgment is affirmed in part and reversed in part.

_____
Philip M. Hess, Presiding Judge

Gary M. Gaertner, Jr., J. and
Renée Hardin-Tammons, J. concur.

15