

# In the Missouri Court of Appeals
## Western District

ST. LOUIS COUNTY, MISSOURI, et al., )
                    Respondents, )
v.                                 )       WD78764
                                )
STATE OF MISSOURI, et al.,       )       FILED: March 8, 2016
                      Appellants. )

## APPEAL FROM THE CIRCUIT COURT OF COLE COUNTY
### THE HONORABLE PATRICIA S. JOYCE, JUDGE

### BEFORE DIVISION ONE: LISA WHITE HARDWICK, PRESIDING JUDGE,
### VICTOR C. HOWARD AND GARY D. WITT, JUDGES

The State of Missouri, the Missouri Department of Public Safety, the Director of the Missouri Department of Public Safety, and the Missouri Sheriffs Methamphetamine Relief Taskforce (collectively, "the State") appeal the circuit court's grant of summary judgment in favor of the Superintendent of Police of St. Louis County ("the Superintendent") on the Superintendent's petition for a judgment declaring him eligible to apply for and receive Deputy Sheriff Salary Supplementation Fund grants for the years 2013 to the present. The State contends the circuit court's judgment incorrectly applies the law, contradicts the Supreme Court's prior ruling in the case, and violates sovereign immunity. The circuit court's judgment is affirmed, in part, and reversed, in part.

**FACTUAL AND PROCEDURAL HISTORY**

In 2008, the General Assembly created the Deputy Sheriff Salary Supplementation Fund ("the Fund"). §§ 57.278 and 57.280, RSMo Cum. Supp. 2013.[1] The Fund is derived from moneys collected by sheriffs from a $10 charge for service of summons, writs, subpoenas, or other court orders. §§ 57.278.1 and 57.280.4. The Missouri Sheriffs Methamphetamine Relief Taskforce ("MoSMART") administers the Fund. § 57.278.1. The Fund is to be used solely to supplement the salaries and benefits of "county deputy sheriffs." *Id*. The Fund's 2013 Local Solicitation described who are "eligible applicants" for Fund grants: "Any County Sheriff's Office may apply for monies under the [Fund] to supplement the salaries and subsequent benefits of its full-time deputies so long as the deputies of that County Sheriff's Office are licensed peace officers or are deputies authorized to perform the same functions as the Sheriff."

In 2012, the Superintendent submitted an application seeking a grant from the Fund for the 2013 fiscal year. MoSMART denied the application on the ground that "the application was not submitted by the Sheriff of St. Louis County, as required by the qualifications of the Deputy Sheriff Salary Supplementation Fund."

St. Louis County, the Superintendent, the St. Louis County Sheriff, the St. Louis County Deputy Sheriff, a St. Louis County police officer, the St. Louis County Transportation Officer, and the Director of the Department of Justice for St. Louis County ("the plaintiffs") filed a four-count petition for declaratory

---

[1] All statutory references are to the Revised Statutes of Missouri 2000, as updated by the 2013 Cumulative Supplement.

judgment against the State. In Counts I and II of the petition, the plaintiffs claimed that Section 57.278 was unconstitutional. In Count III, the plaintiffs alleged that the criteria for assessing grant applications were not properly promulgated as a rule. Lastly, in Count IV, the plaintiffs sought judicial review of MoSMART's rejection of the grant application on the basis that the rejection was unlawful, unreasonable, arbitrary, and an abuse of discretion, and they requested a declaration that the Superintendent has the right to submit grant applications on behalf of all St. Louis County deputy sheriffs for the 2013 grant period, the 2014 grant period, and any future grant periods. The circuit court dismissed the petition after finding that the plaintiffs lacked standing and that the suit was barred by sovereign immunity.

On appeal, the Supreme Court affirmed the dismissal of Counts I through III for lack of standing. *St. Louis Cty. v. State*, 424 S.W.3d 450, 453-54 (Mo. banc 2014). With regard to Count IV, the Court ruled that the Superintendent was the only plaintiff who had standing to challenge MoSMART's rejection of the grant application. The Court found that the Superintendent "has a legal interest in obtaining judicial review of whether he is a county sheriff who is eligible to file a grant application." *Id*. at 454. Therefore, the Court reversed the dismissal of the Superintendent's claim under Count IV and remanded the case to the circuit court.

On remand, the Superintendent filed a motion for summary judgment in which he sought, among other things, a declaration that he is a sheriff of St. Louis County with the right to submit grant applications to the Fund for the 2013 grant

period, the 2014 grant period, and all future grant periods; that the licensed peace officers listed on the 2013 grant application are county deputy sheriffs within the meaning of Section 57.278; and that MoSMART's decision to reject the grant application for its stated reason that he is not the St. Louis County Sheriff was unlawful and unreasonable. The Superintendent also asked the court to order the State to award St. Louis County deputy sheriffs $100 per month from the Fund for the 2013 fiscal year. In response, the State filed a motion for judgment on the pleadings or, alternatively, for summary judgment, in which it asserted that the Superintendent is not the St. Louis County Sheriff and, therefore, is not eligible to apply for grants from the Fund.

The circuit court granted the Superintendent's summary judgment motion. In its judgment, the court found that the Superintendent is a sheriff as a matter of law and that the Superintendent and his deputies have the same powers and duties as other sheriffs and deputies throughout the state whose salaries have been supplemented by the Fund. Consequently, the court found that the Superintendent is a "sheriff" who is eligible to file a Fund grant application; that the St. Louis County police department is a "county sheriff's office" under Section 57.015(4) and its officers are "deputy sheriffs" under Sections 57.015(1) and 57.278; and that there is no rational basis for treating St. Louis County licensed peace officers differently from deputies in other counties that were awarded grant funds simply because St. Louis County uses different job titles for employees that perform the same statutory duties as sheriffs.

4

The court further found that the Superintendent's 2013 grant application was timely and met all the requirements set out in the Fund's 2013 Local Solicitation. Thus, the court concluded that MoSMART's denial of the application was unlawful and unreasonable. The court reversed MoSMART's decision and remanded the case back to MoSMART for further consideration of the 2013 application and all subsequent grant applications. The court further ordered MoSMART to "award grant funds that put the St. Louis County licensed peace officers in the same position that they would have been in if [MoSMART] had not denied the 2013 grant application." The State appeals.

## STANDARD OF REVIEW

Appellate review of summary judgment is essentially *de novo*. *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.* at 380.

## ANALYSIS

***Reconsideration of Grant Applications for Past Fiscal Years***

In Point I, the State contends the circuit court erred in ordering MoSMART to reconsider the Superintendent's applications for Fund grants for the 2013, 2014, and 2015 fiscal years. The State argues that this order is a mandatory injunction and, as such, is deficient under Rule 92.02 because the order does not explain why or how MoSMART is to reconsider grant applications for years for which

5

appropriations have lapsed. The State also argues that reconsideration of the Superintendent's grant applications is impossible under the State's fiscal year financial system.

The circuit court issued its judgment pursuant to Section 536.150, which authorizes judicial review of a non-contested administrative decision. Under Section 536.150.1, an administrative decision "'may be reviewed by suit for injunction, certiorari, mandamus, prohibition or other appropriate action,'" including an action for declaratory judgment. *Gordon v. City of Kansas City*, 450 S.W.3d 793, 799 (Mo. App. 2014) (quoting § 536.150.1). After the court determines whether the administrative decision is "unconstitutional, unlawful, unreasonable, arbitrary, or capricious or involves an abuse of discretion," Section 536.150.1 gives the court the authority to "order the administrative officer or body to take such further action as it may be proper to require."

The administrative decision under review in this case is MoSMART's denial of the Superintendent's 2013 grant application and any subsequent grant applications on the basis that the Superintendent is not eligible to apply because he is not the sheriff of St. Louis County. In its judgment, the court declared that the Superintendent is eligible to apply for Fund grants and, therefore, MoSMART's denial of the Superintendent's 2013 grant application was unlawful and unreasonable. The court then ordered MoSMART to further consider the Superintendent's 2013 grant applications and all subsequent applications. This was a proper exercise of the court's authority under Section 536.150.1.

6

Indeed, the court's remanding the case to MoSMART to further consider the 2013 grant application was precisely what the Supreme Court indicated should happen if the circuit court found that the Superintendent was eligible to file grant applications. In remanding this case back to the circuit court in *St. Louis County*, 424 S.W.3d at 454, the Supreme Court stated, "If the superintendent is in fact a 'sheriff' eligible to file a grant application, an issue on which this Court takes no position, then the trial court could remand the matter back to MoSMART for further consideration of the grant application." The circuit court acted within its authority under Section 536.150.1 when it remanded the case to MoSMART for further consideration of the Superintendent's 2013 grant application and any subsequent grant applications that were denied on the same unlawful and unreasonable basis.

Nevertheless, the State argues that reconsideration of grant applications for past fiscal years is impossible to perform under the State's financial system because the appropriations for those fiscal years have lapsed. In support of this argument, the State cites Section 33.065, which states that "[n]o appropriation shall confer authority to incur an obligation after the termination of the fiscal year to which it relates." This statute prohibits the making of an appropriation that extends the obligation to pay into future fiscal years, beyond the fiscal year to which the obligation relates. In other words, the appropriation cannot use future fiscal years' funds to pay for current obligations. It does not prohibit the current appropriation of funds to compensate for a state agency's unlawful funding decisions in prior fiscal years. To hold otherwise would essentially leave parties

7

aggrieved by funding decisions without a remedy on judicial review, as most, if not all, appropriations will lapse before the case is finally decided. The circuit court had the authority to remand the case back to MoSMART for further consideration of the 2013 grant application and any subsequent grant applications that were denied on the same basis. Point I is denied.

### *Substitution of Discretion*

In Point II, the State contends the circuit court erred in ordering MoSMART to "award grant funds that put the St. Louis County licensed peace officers in the same position they would have been in if [MoSMART] had not denied the 2013 grant application." The State argues that the court's ordering MoSMART to award grant funds contradicted the law of the case, namely, the Supreme Court's determination in *St. Louis County*, 424 S.W.3d at 453, that awarding grant funds is a discretionary decision vested solely in MoSMART.

The doctrine of law of the case provides that an "'appellate decision becomes the law of the case in a subsequent proceeding in the same cause and precludes re-examination of issues decided in the original appeal.'" *Soderholm v. Nauman*, 466 S.W.3d 610, 618 (Mo. App. 2015) (citation omitted). The rule "'applies to matters decided by the appellate court's opinion, either directly or by implication.'" *Id*. (citation omitted).

In *St. Louis County*, 424 S.W.3d at 453-54, the Supreme Court held that none of the original plaintiffs in the case, including the Superintendent, have a legally protectable interest sufficient to confer standing to challenge the

8

constitutionality of Section 57.278, the statute that created the Fund and provides for its administration. This holding was based, in part, on the Court's determination that the plaintiffs have no right to a grant of money from the Fund because, "[b]y definition, grants from the fund are discretionary expenditures determined by MoSMART." *Id*. at 453.

The circuit court's order directing MoSMART to award grant funds to the Superintendent was contrary to the Supreme Court's ruling. Having found that MoSMART's stated reason for denying the Superintendent's grant applications was unlawful and unreasonable, the court ordered MoSMART to further consider the applications, presumably without factoring in the invalid reason. This was proper, as courts have the power to determine whether an agency has exercised its discretion lawfully and to direct the agency to do so. *See State ex rel. G.S. Techs. Operating Co. v. Pub. Serv. Comm'n*, 116 S.W.3d 680, 690-91 (Mo. App. 2003) (holding that, because the Commission's decision to reject a witness's testimony was based on an erroneous interpretation of law and not an exercise of discretion, the case should be remanded to the Commission to reconsider the testimony under the proper standard). The court's additional order directing MoSMART to award grant funds to the Superintendent, however, removed MoSMART's discretion and substituted the court's discretion in its place. This was contrary not only to the Supreme Court's determination in *St. Louis County*, 424 S.W.3d at 453, that the awarding of fund grants is solely a matter of MoSMART's discretion, but it was

9

also contrary to Section 536.150.1, which prohibits the court from substituting its discretion "for discretion legally vested in such administrative officer or body."

Because the court may not infringe upon an agency's discretion, judicial review is limited to legal considerations. *Mo. Nat'l Educ. Ass'n v. Mo. State Bd. of Educ.*, 34 S.W.3d 266, 280 (Mo. App. 2000). The only legal issue advanced by the Superintendent was his asserted eligibility to file a grant application. That he prevailed on that legal issue did not authorize the circuit court to exercise the discretion that the Supreme Court clearly found to be vested in MoSMART. There was no evidence or finding concerning the validity of any other factor that MoSMART might use in exercising its discretion to consider the Superintendent's grant applications.

The circuit court erred in ordering MoSMART to "award grant funds that put the St. Louis County licensed peace officers in the same position they would have been in if [MoSMART] had not denied the 2013 grant application." Therefore, that portion of the judgment is reversed. Point II is granted.

### Sovereign Immunity

In Point III, the State contends that the court's orders directing MoSMART to award grant funds to the Superintendent and assessing costs against the State violated the doctrine of sovereign immunity, in that the General Assembly has not waived the State's immunity by creating a statutory entitlement to moneys from the Fund or by authorizing costs.

10

Our holding in Point II that the court erred in directing MoSMART to award grant funds to the Superintendent moots the State's sovereign immunity challenge to that award. Nevertheless, we note, *ex gratia*, that the Supreme Court specifically addressed this issue in *St. Louis County*, 424 S.W.3d at 454 n.3: "Section 536.150, which authorizes administrative review in this case, *operates as a waiver of sovereign immunity* because the statute permits judicial review and reversal of state administrative decisions involving entitlement to state funds." (Emphasis added.) This statement was not merely *dicta*, as the State argues, because it was essential to the Court's ruling that the Superintendent's administrative review claim is not barred by sovereign immunity. *Id*. at 454. The law of the case is that the Superintendent's claim is not barred by sovereign immunity.

As for the court's assessment of costs against the State, "'Absent statutory authority, costs cannot be recovered in state courts from the state of Missouri or its agencies or officials.'" *State ex rel. State, Dep't of Soc. Servs., Family Support Div. v. Campbell*, 386 S.W.3d 229, 232 (Mo. App. 2012) (quoting *Richardson v. State Highway & Transp. Comm'n*, 863 S.W.2d 876, 882 (Mo. banc 1993)). When the legislature waives sovereign immunity regarding costs, it does so explicitly. *Id*. The Superintendent did not identify any statute authorizing the assessment of costs in this case, and we find none. Therefore, the circuit court erred in assessing costs against the State. *State ex rel. Ras Inv., Inc. v. Landon*, 75 S.W.3d 847, 850 (Mo. App. 2002). The portion of the judgment assessing

11

court costs against the State is reversed.  Point III is granted as it relates to the assessment of costs and denied as moot with regard to the claim that sovereign immunity bars the Superintendent's claim.

***The Superintendent's Eligibility to File a Grant Application***

In Point IV, the State contends the circuit court erred in finding that the Superintendent is eligible to file grant applications because the Superintendent is not a "sheriff" within the meaning of Section 57.278.1.

Resolution of this point is a matter of statutory interpretation.  The goal of statutory interpretation is to ascertain the legislature's intent from the language used and to give effect to that intent if possible.  *Mo. Nat'l Educ. Ass'n*, 34 S.W.3d at 279.  We accord the language its plain and ordinary meaning, and where the language is clear, we must give effect to the language as written.  *Id*.  We are "without authority to read into a statute a legislative intent contrary to the intent made evident by the plain language."  *Id*.

Section 57.278.1 states that the Fund "shall be used solely to supplement the salaries, and employee benefits resulting from such salary increases, of county deputy sheriffs."  Section 57.015(1) provides that, as used in Chapter 57, the term "deputy sheriff" means, in pertinent part, "any deputy sheriff who is employed full time by a law enforcement agency, authorized by this chapter and certified pursuant to chapter 590, RSMo."  A "law enforcement agency" is defined as "any county sheriff's office of this state that employs county law enforcement deputies authorized by this chapter and certified by chapter 590, RSMo."  § 57.015(4).

12

The State notes that these statutes require that the sheriff and deputy sheriffs be "authorized" by Chapter 57.[2] The State argues that the only sheriffs authorized by Chapter 57 are elected officers under Section 57.010.1. Moreover, the State insists that the only deputy sheriffs authorized by Chapter 57 are deputy sheriffs of non-charter first class counties, Section 57.201.1; deputy sheriffs of second-class counties, 57.220; and deputy sheriffs of third- and fourth-class counties, Section 57.250.

The State asserts that the Superintendent and his officers are not authorized under Chapter 57 but, instead, are authorized by the St. Louis County Charter. Specifically, the Superintendent and his officers are authorized under Section 4.275.2 of the charter, which provides:

> The superintendent of police and the department of police, including the duly authorized officers, agents and deputized representatives thereof shall have all the power and perform all the duties of the sheriff and the constables with respect to preservation of order, prevention of crimes and misdemeanors, apprehension and arrest, conserving the peace and other police and law enforcement functions, except those powers and duties vested in other departments or officers of the county by this charter.

The State contends that, simply because the Superintendent and his officers perform the duties that are assigned to sheriffs in other counties does not make them "sheriffs" for purposes of the Fund statutes.

We disagree. The authority of the Superintendent and his officers is derived from both the St. Louis County Charter and Chapter 57. This is because, even though St. Louis County has a charter, it is still a legal subdivision of the state and

---

[2] It is undisputed that the Superintendent and his officers are certified by Chapter 590.

13

must provide for the performance of state functions, including those performed by sheriffs, just like other counties. *State on Info. of Dalton ex rel. Shepley v. Gamble*, 280 S.W.2d 656, 659 (Mo. banc 1955) (citing Mo. Const. art. VI, § 18(b)). In *Gamble*, the Supreme Court addressed the issue of whether the Superintendent had the authority to take over and perform law enforcement functions previously vested in the county sheriff and constable. *Id*. at 660. In holding that the Superintendent did, the Court concluded that "provision must be made by the charter county for the performance of the duties enjoined upon sheriffs by our statutes, but the county has the choice as to what officer or agency will be designated to perform the duties." *Id*. Because the Superintendent and his officers are charged with performing all of the duties enjoined upon county sheriffs under Missouri statutes, they are a "law enforcement agency" under Section 57.015(4) and the officers are "deputy sheriffs" under Sections 57.015(1) and 57.278.

Moreover, with regard to the State's argument that only elected officers are sheriffs under Section 57.010.1, if that were the case, then St. Louis County would not have any "sheriff" who was required to collect and remit the $10 service of process fee that Section 57.280.4 imposes to create the Fund. Yet, the State's counsel stated during oral argument that the Superintendent is, in fact, required to collect the $10 service of process fee. The State cannot have it both ways; if the Superintendent is required to collect the $10 service of process fee, a

14

duty imposed only on the "sheriff" under Section 57.280.4, then the officers who actually do the serving are "deputy sheriffs" under Section 57.278.

Lastly, Section 57.270 supports the conclusion that the Superintendent's officers are deputy sheriffs. Section 57.270 states, "Every deputy sheriff shall possess all the powers and may perform any of the duties prescribed by law to be performed by the sheriff." The Superintendent's officers possess the powers and duties prescribed by law to be performed by the sheriff.

The circuit court did not err in finding that the Superintendent is a "sheriff" within the meaning of Section 57.278.1 and is, therefore, eligible to file applications for grants from the Fund. Point IV is denied.

### CONCLUSION

The portion of the circuit court's judgment ordering MoSMART to "award grant funds that put the St. Louis County licensed peace officers in the same position they would have been in if [MoSMART] had not denied the 2013 grant application" is reversed. Additionally, the court's order assessing costs against the State is reversed. The judgment is affirmed in all other respects.

_____
LISA WHITE HARDWICK, JUDGE

ALL CONCUR.

15