ST. LOUIS COUNTY, Missouri, et al., Respondents,

v.

STATE of Missouri, et al., Appellants.

WD 80482

Missouri Court of Appeals, Western District.

Filed: August 8, 2017

Emily A. Dodge, Jefferson City for appellants.

Cynthia L. Hoemann, St. Louis for respondent.

Before Division One: James Welsh, Presiding Judge, Lisa White Hardwick and Gary D. Witt, Judges

Lisa White Hardwick, Judge

The State of Missouri, the Missouri Department of Public Safety, the Director of the Missouri Department of Public Safety, and the Missouri Sheriffs Methamphetamine Relief Taskforce (collectively, "the State") appeal the circuit court's judgment in favor of the Superintendent of Police of St. Louis County ("the Superintendent") on the Superintendent's motion for relief from the State's decision regarding the Superintendent's applications for grants to supplement deputy sheriffs' salaries. The State contends that the court's judgment exceeds the scope of our mandate from a prior appeal and orders an indefinite and confusing injunction that fails to comply with Supreme Court Rule 92.02. For reasons explained herein, we affirm.

## FACTUAL AND PROCEDURAL HISTORY [1]

In 2008, the General Assembly created the Deputy Sheriff Salary Supplementation Fund ("the Fund"). §§ 57.278 and 57.280, RSMo 2016.[2] The Fund is derived from moneys collected by sheriffs from a $10 charge for service of summons, writs, subpoenas, or other court orders. §§ 57.278.1 and 57.280.4. The Fund is to be used solely to supplement the salaries and benefits of "county deputy sheriffs." § 57.278.1. The Fund's 2013 Local Solicitation described who were "eligible applicants" for Fund grants: "Any County Sheriff's Office may apply for monies under the [Fund] to supplement the salaries and subsequent benefits of its full-time deputies so long as the deputies of that County Sheriff's Office are licensed peace officers or are deputies authorized to perform the same functions as the Sheriff."

The Missouri Sheriffs Methamphetamine Relief Taskforce ("MoSMART") administers the Fund. Id. Each May, the MoSMART Board begins to review grant applications submitted by county sheriffs for the next fiscal year.[3] The Department of Public Safety prepares spreadsheets to aid in the review and funding decisions, including a spreadsheet outlining the total outlays for various funding scenarios. During the review process, the Board determines generally how much it wants to distribute from the Fund and then ap-

---

1. Several facts are adopted from this court's opinion in *St. Louis County v. State*, 482 S.W.3d 842, 844-46 (Mo. App. 2016), without further citation.

2. All statutory references are to the Revised Statutes of Missouri 2016.

3. Fiscal years run from July 1 through June 30. For example, the 2013 fiscal year ran from July 1, 2012, through June 30, 2013.

proves a funding formula to allocate the funds among the eligible applicants.

In 2012, the Superintendent submitted an application seeking a grant from the Fund for the 2013 fiscal year. MoSMART denied the application on the ground that "the application was not submitted by the Sheriff of St. Louis County, as required by the qualifications of the Deputy Sheriff Salary Supplementation Fund."

St. Louis County, the Superintendent, the St. Louis County Sheriff, the St. Louis County Deputy Sheriff, a St. Louis County police officer, the St. Louis County Transportation Officer, and the Director of the Department of Justice for St. Louis County ("the plaintiffs") filed a four-count petition for declaratory judgment against the State. In Counts I and II of the petition, the plaintiffs claimed that Section 57.278 was unconstitutional. In Count III, the plaintiffs alleged that the criteria for assessing grant applications were not properly promulgated as a rule. Lastly, in Count IV, the plaintiffs sought judicial review of MoSMART's rejection of the grant application on the basis that the rejection was unlawful, unreasonable, arbitrary, and an abuse of discretion. The circuit court dismissed the petition after finding that the plaintiffs lacked standing and that the suit was barred by sovereign immunity.

On appeal, the Supreme Court affirmed the dismissal of Counts I through III for lack of standing. *St. Louis Cty. v. State*, 424 S.W.3d 450, 453-54 (Mo. banc 2014). With regard to Count IV, the Court ruled that the Superintendent was the only plaintiff with standing to challenge MoSMART's rejection of the grant application. The Court found that the Superintendent "has a legal interest in obtaining judicial review of whether he is a county sheriff who is eligible to file a grant application." *Id.* at 454. Therefore, the Court reversed the dismissal of the Superintendent's claim

under Count IV and remanded the case to the circuit court. *Id.*

On remand, the circuit court granted summary judgment in favor of the Superintendent in February 2015. In its judgment, the court found that the Superintendent was a "sheriff" who was eligible to file a Fund grant application; that the St. Louis County police department was a "county sheriff's office" under Section 57.015(4) and its officers were "deputy sheriffs" under Sections 57.015(1) and 57.278; and that there was no rational basis for treating St. Louis County licensed peace officers differently from deputies in other counties that were awarded grant funds simply because St. Louis County uses different job titles for employees that perform the same statutory duties as sheriffs.

The court further found that the Superintendent's 2013 grant application was timely and met all the requirements set out in the Fund's 2013 Local Solicitation. Thus, the court concluded that MoSMART's denial of the application was unlawful and unreasonable. The court reversed MoSMART's decision and remanded the case back to MoSMART for further consideration of the 2013 application and all subsequent grant applications. The court further ordered MoSMART to "award grant funds that put the St. Louis County licensed peace officers in the same position that they would have been in if [MoSMART] had not denied the 2013 grant application."

On appeal, we affirmed the circuit court's determination that the Superintendent was a "sheriff" who was eligible to apply for grants from the Fund and that the Superintendent's officers were "deputy sheriffs." *St. Louis Cty. v. State*, 482 S.W.3d 842, 850-51 (Mo. App. 2016). We also held that the circuit court acted within its authority under Section 536.150 when it

remanded the case to MoSMART for further consideration of the Superintendent's 2013 grant application and any subsequent grant applications that were denied on the unlawful and unreasonable basis that the Superintendent was not a sheriff. *Id.* at 847. However, we reversed the portion of the judgment ordering MoSMART to "award grant funds that put the St. Louis County licensed peace officers in the same position that they would have been if [MoSMART] had not denied the 2013 grant application." *Id.* at 848. We held that, by making such an order, the circuit court removed MoSMART's discretion and substituted the court's discretion in its place. *Id.* We explained that this was contrary to the Supreme Court's pronouncement in *St. Louis County*, 424 S.W.3d at 453, that the awarding of grants is solely a matter of MoSMART's discretion, and it was also contrary to Section 536.150.1, which prohibits the court from substituting its discretion for discretion vested in an administrative body. *Id.* We issued our mandate in the case on March 30, 2016. That same day, the circuit clerk's office opened a new case and made a docket entry, "Reopen from Mandate." The circuit court took no further action on the case at that time.

A few weeks later, on April 22, 2016, MoSMART met and reconsidered the Superintendent's applications for grants from the Fund for fiscal years 2013, 2014, 2015, and 2016. MoSMART's funding formulas for applications for each of those years were:

**Fiscal Years 2013 and 2014:** The formula was two-fold: 1) positions identified with an annual salary less than $28,000 be awarded funds to increase the annual salary to $28,000, not to exceed the supplemental salary requested but, where applicable, not less than $1,200 for the 12 month project period and 2) positions identified with an annual salary more than $28,000 be awarded funds of $1,200 for the 12 month project period, but where applicable, not to exceed the supplemental salary requested.

**Fiscal Year 2015:** The formula was two-fold: 1) positions identified with an annual salary less than $28,000 be awarded funds to increase the annual salary to $28,000, not to exceed the supplemental salary requested but, where applicable, not less than $1,200 for the 12 month project period and 2) positions identified with an annual salary of $28,000 but less than $50,000 be awarded funds of $1,200 for the 12 month project period not to exceed the supplemental salary requested.

**Fiscal Year 2016:** The formula was two-fold: 1) positions identified with an annual salary less than $29,000 be awarded funds to increase the annual salary to $29,000, not to exceed the supplemental salary requested but, where applicable, not less than $1,200 for the 12 month project period and 2) positions identified with an annual salary of $29,000 but less than $35,000 be awarded funds of $1,200 for the 12 month project period not to exceed the supplemental salary requested.

As these funding formulas indicate, in fiscal years 2013 and 2014, MoSMART awarded grant money from the Fund not only to raise annual salaries of deputy sheriffs to a minimum of $28,000, but also to supplement, by $1200, the salaries of those deputy sheriffs making more than $28,000 per year. In fiscal year 2015, MoSMART continued its practice of awarding grant money to raise annual salaries to $28,000 but restricted the $1200 supplement to only those deputy sheriffs making more than $28,000 per year but less than $50,000. In fiscal year 2016, MoSMART adjusted its formula to award grants from the Fund to those making less than

$29,000 to increase their salary to $29,000. MoSMART further restricted the $1200 supplement to only those deputy sheriffs making more than $29,000 but less than $35,000.

The Department of Public Safety prepared spreadsheets outlining the financial consequences of applying the funding formulas for fiscal years 2013, 2014, 2015, and 2016 to the Superintendent's applications for those years. Upon reviewing this information, MoSMART decided that, instead of applying the funding formula to the Superintendent's corresponding year's application, it would simply apply the funding formula for fiscal year 2016 across the board to all of the Superintendent's applications for 2013 through 2016. According to the minutes of the meeting, MoSMART made this decision after taking into account the Fund's "funding situation, monies currently available in the [F]und, the number of deputies in the St. Louis County applications, and the fact that[,] had monies been paid under previous funding formula(s)[,] the [F]und would have had deficit spending." The minutes also indicated that MoSMART considered the "current balances in the [F]und and sustainability of the program." MoSMART notified St. Louis County of its decision and informed it that, applying the 2016 funding formula to all of the Superintendent's applications, St. Louis County would receive $9,234.67 in grant funds for fiscal year 2013; $10,980.40 in grant funds for fiscal year 2014; and no grant funds for fiscal years 2015 and 2016.

The Superintendent subsequently filed a motion in the case that the circuit court had opened following our mandate. The Superintendent's motion was titled "Plaintiff's Motion for Relief from Defendants' Unlawful Decision Applying Current FY16 Funding Formula to Superintendent's FY13-FY15 DSSSF Applications." In the motion, the Superintendent asserted that MoSMART's decision to apply fiscal year 2016's funding formula to his 2013, 2014, and 2015 applications for grants was unlawful, unreasonable, arbitrary, and an abuse of discretion. The Superintendent's motion and attached exhibits indicated that, by applying the 2016 funding formula to St. Louis County's prior applications, MoSMART awarded the salary supplement to only six of St. Louis County's licensed court deputies for 2013 and seven of its licensed court deputies for 2014; none of the more than 800 St. Louis County commissioned police officers for 2013 and 2014; and none of the St. Louis County court deputies or commissioned polices officers for 2015.

In contrast, the Superintendent noted that, for other counties throughout the state including those adjacent to St. Louis County, MoSMART applied the funding formula to each corresponding year's application. This resulted in MoSMART's awarding the salary supplement in 2013 and 2014 to deputy sheriffs in those other counties regardless of how high their salaries were, and MoSMART's awarding the salary supplement in 2015 to deputy sheriffs in those other counties who earned less than $50,000 per year. The Superintendent asked that the court reverse MoSMART's decision and remand the matter back to MoSMART for reconsideration of his 2013, 2014, and 2015 applications under the same criteria that MoSMART had applied to other sheriff's offices throughout the state for those years.

The State filed suggestions in opposition to the Superintendent's motion. In its suggestions, the State argued that, by asking the court to order MoSMART to apply the funding formulas in effect for fiscal years 2013, 2014, and 2015, the Superintendent was asking the court to usurp MoSMART's discretion, which was contrary to

the law of the case as enunciated in both the Supreme Court's and this court's opinions and contrary to Section 536.150.1.

Additionally, the State argued that its decision was a reasonable exercise of its discretion based on its consideration of appropriation authority, the financial state of the Fund, and the Fund's sustainability. Specifically, the State asserted that, during fiscal years 2013 through 2016, the Fund's expenditures consistently exceeded its receipts and that, over those years, the Fund balance decreased from approximately $15.2 million at the beginning of fiscal year 2013 to $11.8 million at the beginning of fiscal year 2017. The State explained that the drop in Fund receipts and corresponding decrease in the Fund's balance caused MoSMART to increasingly tighten the funding formula for allocating grants. The State also noted that, if it had applied MoSMART's 2013, 2014, and 2015 funding formulas to the Superintendent's applications for those years, it would have resulted in an additional expenditure from the Fund totaling approximately $3.25 million. According to the State, that expenditure would had to have come from MoSMART's fiscal year 2016 appropriation, which was $7.2 million. Because the final total of Fund expenditures to other counties during fiscal year 2016 was approximately $4.3 million, the State argued that there would not have been enough appropriation authority to grant $3.25 million to the Superintendent.

The Superintendent filed a reply in support of his motion, arguing that the Fund was sustainable and solvent because its balance was $11.8 million as of July 1, 2016. The Superintendent asserted that paying St. Louis County the $3.25 million to which it was entitled for fiscal years 2013, 2014, and 2015 would have left a

remaining balance of $8.5 million. The Superintendent noted that this amount was significantly more than the total amount that MoSMART usually paid out each year.[4]

As for the State's appropriations argument, the Superintendent noted that the appropriation for fiscal year 2016 was $7.2 million, but the total Fund expenditures for that year were only $4.3 million. The Superintendent argued that the remaining $2.9 million of the appropriation could have been used to supplement the salaries of the St. Louis County commissioned officers, but MoSMART let that appropriation lapse. Additionally, the Superintendent argued that MoSMART could have used part of its appropriation for fiscal year 2017 to pay for the supplement. The Superintendent asked the court to review MoSMART's decision pursuant to Section 536.150.1, find that it was unlawful, unreasonable, unfair, and arbitrary for MoSMART to apply different criteria to his grant applications than was applied to other sheriffs' departments throughout the state, and reverse and remand the decision for reconsideration.

The circuit court held a hearing on the Superintendent's motion for relief. At the hearing, the parties offered into evidence a joint stipulation of facts and exhibits supporting the arguments that they made in their pleadings. The court then entered its judgment finding in favor of Superintendent and ordering that MoSMART "apply the proper standard for the application of the Superintendent Application." The State appeals.

### STANDARD OF REVIEW

Section 536.150 governs judicial review of noncontested administrative de-

---

4. MoSMART paid a total of $4.6 million in grants from the Fund for fiscal year 2013, $5.1 million for fiscal year 2014, and $5.4 million for fiscal year 2015.

cisions. *Mo. Nat. Educ. Ass'n v. Mo. State Bd. of Educ.*, 34 S.W.3d 266, 274 (Mo. App. 2000). In noncontested cases, the circuit court conducts a "de novo review in which it hears evidence on the merits of the case, makes a record, determines the facts, and decides whether, in view of those facts, the agency's decision is unconstitutional, unlawful, unreasonable, arbitrary, capricious, or otherwise involves an abuse of discretion." *Id.* (citing § 536.150.1). The circuit court does not defer to the agency's factual or credibility determinations. *Id.* Moreover, the circuit court is prohibited from substituting its discretion for discretion that is legally vested in the administrative agency. *Id.* (citing § 536.150.1).

On appeal, we review the circuit court's judgment and not the administrative agency's decision. *Id.* Our review of the circuit court's judgment is "essentially the same as the review for a court-tried case" and, therefore, "is governed by Rule 73.01 as construed in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976)." *Id.* at 274-75. We review the judgment "to determine whether its finding that the agency decision was or was not unconstitutional, unlawful, unreasonable, arbitrary, capricious, or the product of an abuse of discretion rests on substantial evidence and correctly declares and applies the law." *Id.* at 275.

### ANALYSIS

■ In Point I, the State contends the circuit court erred in entering a judgment concerning MoSMART's decision on reconsideration of the Superintendent's grant applications for fiscal years 2013, 2014, and 2015. The State argues that, in doing so, the circuit court exceeded the scope of our mandate in *St. Louis County*, 482 S.W.3d 842. Our mandate in *St. Louis County*, 482

S.W.3d at 851, reversed the portion of the circuit court's prior judgment ordering MoSMART to "award grant funds that put the St. Louis County licensed peace officers in the same position that they would have been if [MoSMART] had not denied the 2013 grant application." [5] We affirmed the remainder of the judgment, which included the court's order remanding the case back to MoSMART for further consideration of the 2013 grant application and any subsequent grant applications that were denied on the unreasonable and unlawful basis that the Superintendent was not eligible to apply for such grants. *Id.* at 846-47.

The State argues that, once this case was remanded to MoSMART in April 2016 so that it could reconsider the pertinent grant applications, "this case should have been at an end." The State acknowledges that the Superintendent was entitled to judicial review of MoSMART's April 22, 2016 decision but argues that the Superintendent did not file a new action for noncontested case review of that decision. The State asserts that the Superintendent's "Motion for Relief from Defendants' Unlawful Decision Applying Current FY16 Funding Formula to Superintendent's FY13-FY15 DSSSF Applications" was insufficient to trigger judicial review under Section 536.150 and, as a result, the circuit court's judgment rendered on that motion exceeded our mandate in *St. Louis County*. We disagree.

"Section 536.150 authorizes review by suit for injunction, certiorari, mandamus, prohibition, or other appropriate action." *State ex rel. Stewart v. Civil Serv. Comm'n of St. Louis*, 120 S.W.3d 279, 285 (Mo. App. 2003) (quoting § 536.150.1). "Just

---

5. We also reversed the assessment of costs against the State. *St. Louis Cty.*, 482 S.W.3d at 851. This is not at issue here.

what label is attached to the petition for review cannot be considered of any real significance." *Id.* (citation omitted). Rather, "[w]hat is significant is that the petition indicate that it is seeking judicial review of the agency action under the appropriate statute." *Id.* "Failure to explicitly characterize a suit brought pursuant to section 536.150 or misconceiving the precisely applicable remedy should not be fatal." *Id.* (quoting *Hagely v. Bd. of Educ.*, 841 S.W.2d 663, 670 (Mo. banc 1992)).

In the Superintendent's motion, he asked the court to review and grant him relief from MoSMART's April 22, 2016 decision, which he asserted was unlawful, unreasonable, arbitrary, and constituted an abuse of discretion. Given that Section 536.150.1 provides for circuit courts to review agency decisions to determine if they are "unconstitutional, unlawful, unreasonable, arbitrary, or capricious or involve[ ] an abuse of discretion," it is clear that the Superintendent was seeking judicial review, pursuant to Section 536.150, of MoSMART's April 22, 2016 decision. Indeed, the State recognized this in its suggestions in opposition to the motion, stating that "it might be more appropriate to treat the 'motion' as if it were a new petition."

That is exactly how the court and the parties treated the Superintendent's motion. In his reply to the State, the Superintendent expressly stated that he was seeking judicial review of MoSMART's decision pursuant to Section 536.150.1. The court then followed the procedure for judicial review of a noncontested case as prescribed by Section 536.150.1. The court set the case for a hearing, during which the parties offered a joint stipulation of facts and exhibits for the court to consider in reviewing MoSMART's decision, and the court subsequently rendered a judgment in favor of the Superintendent on his motion.

Because the Superintendent's motion clearly indicated that he was seeking judicial review of MoSMART's April 22, 2016 decision, the court did not err in treating the motion as a petition for judicial review. Moreover, because our mandate in *St. Louis County* affirmed the circuit court's decision to remand the case to MoSMART for further consideration of the Superintendent's applications, and Section 536.150.1 provided for judicial review of MoSMART's subsequent decision, the court's entering judgment on the Superintendent's petition for judicial review did not exceed the scope of our mandate. Point I is denied.

In Point II, the State contends the circuit court erred because it ordered an indefinite and confusing injunction that failed to comply with Supreme Court Rule 92.02. Rule 92.02(e) provides, in pertinent part: "Every order granting an injunction . . . shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the petition or other document, the act or acts sought to be restrained." The State argues that the court's judgment, which read, in its entirety, "Court finds for [the Superintendent] and hereby orders that the MOSMART Board apply the proper standard for the application of the Superintendent Application" ordered an injunction and, as such, did not comply with Rule 92.02(e)'s specificity requirements.

In response, the Superintendent asserts that Rule 92.02 does not apply because he did not seek an injunction in his motion and the court did not order an injunction. We need not determine Rule 92.02's applicability because, even if it did apply, the State did not preserve this issue for review. Rule 78.07(c) requires that, "[i]n all cases, allegations of error relating to the form or language of the judgment,

including the failure to make statutorily required findings, must be raised in a motion to amend the judgment in order to be preserved for appellate review." The State did not file a motion to amend the judgment to include findings of fact. Its failure to do so waived appellate review of any of its allegations of error concerning the language of the court's judgment. *Dohogne v. Counts*, 307 S.W.3d 660, 668-69 (Mo. App. 2010). Point II is denied.

CONCLUSION

The circuit court's judgment is affirmed.

All Concur.